UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| ROY HENRY MCATEER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 20-341-GFVT |
| | ) | |
| v. | ) | |
| | ) | |
| LEXINGTON-FAYETTE URBAN | ) | **MEMORANDUM OPINION** |
| COUNTY GOVERNMENT, et al., | ) | **&** |
| | ) | **ORDER** |
| Defendants. | ) | |

*** *** *** ***

Plaintiff Roy Henry McAteer is a resident of Lexington, Kentucky. This matter is before

the Court to review the Plaintiff's Complaint [R. 1] and to address several pending motions

[R. 13, 15, 16].

**I**

Before proceeding, history may provide some context. In April 2020, in an earlier and

separate action arising out of the same events at issue in this proceeding, McAteer filed a *pro se*

civil rights complaint pursuant to 42 U.S.C. § 1983. *McAteer v. Lexington-Fayette Urban Co.*

*Gov't*, No. 5: 20-151-JMH (E.D. Ky. 2020). The 54-page handwritten complaint in that action

alleged that more than a dozen county officials and officers at the Fayette County Detention

Center ("FCDC") mistreated or tortured McAteer while he was detained at the jail from April to

September 2019. The Court granted McAteer pauper status and the matter was set for initial

screening.

When the Court did not immediately order the defendants served with process, McAteer

filed a petition for a writ of mandamus in the Sixth Circuit seeking to compel it to do so.

However, days later McAteer filed a motion in this Court to voluntarily dismiss his case, a request the Court granted. McAteer then immediately moved for the Court to disregard his motion to voluntarily dismiss the action. While the motion to re-open that case remained pending, on August 6, 2020, McAteer filed his Complaint in this case asserting similar claims arising out of the same facts. Judge Hood noted the filing of this new case and denied McAteer's motion, thus leaving the earlier action closed. The Sixth Circuit would later note this chain of events in denying McAteer's mandamus request as moot.

This case presents the same kind of procedural hiccups as its predecessor. After McAteer corrected minor formal errors, the Court granted his request to proceed *in forma pauperis* and entirely waived payment of the filing fee. [R. 3, 6, 7, 8] But two days later McAteer – who had previously indicated that he is homeless – paid the entire $400.00 filing fee, moved to have his pauper status revoked, and requested (as he had in the first case) that federal marshals immediately serve the defendants with process. [R. 9, 10, 11] In light of McAteer's full payment of the filing fee, the Court granted his request that his *pauper* status be rescinded. However, the Court noted that McAteer has extensive experience litigating cases in federal court: the Court's online PACER database shows that McAteer has previously filed more than a dozen civil cases in the federal courts of Alabama and Oklahoma. Further, in his motion McAteer expressly referred to Rule 4(c)(3) of the Federal Rules of Civil Procedure, which would have indicated to him that service by federal marshals is only required if the plaintiff is granted pauper status and does not pay the filing fee. In light of his litigation experience and because McAteer had affirmatively rejected pauper status, the Court directed him to effect service of process without the aid of the Court. [R. 12] McAteer promptly filed an objection to the Court's Order and moved to amend his complaint to include the substance of his objection. [R. 13, 14]

McAteer also filed a motion requesting the appointment of counsel [R. 15] and another

requesting either reinstatement of his pauper status or a 90-day extension of time to effect service

of process [R. 16].  The ninety-day period established by Rule 4(m) to complete service of

process has passed, even if the additional time sought in McAteer's motion is included.

## II

Before addressing the matters raised by McAteer's recent motions, an initial review of his

Complaint is warranted.  While McAteer has paid the filing fee, "[e]ven if a non prisoner pays

the filing fee and/or is represented by counsel, the complaint must be screened under

§ 1915(e)(2)." *McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997), *abrogated on other*

*grounds by Jones v. Bock*, 549 U.S. 199 (2007).  In addition, review may be conducted pursuant

to *Tingler v. Marshall*, 716 F.2d 1109, 1112 (6th Cir. 1983).  While "the [Prison Litigation

Reform Act] generally overruled the set of procedures outlined in *Tingler*" for complaints filed

by prisoners, *Coleman v. Tollefson*, 733 F. 3d 175, 177 (6th Cir. 2013), *Tingler* remains good

law for cases unaffected by the PLRA's screening rules.  *Cf. Wagenknecht v. United States*, 533

F.3d 412, 417 n.4 (6th Cir. 2008) ("Since Wagenknecht paid his filing fee, the *Tingler*

procedures apply to the instant case.").

McAteer names nine defendants in his Complaint, including the Lexington-Fayette Urban

County Government, New Vista Mental Health Services, New Vista Supervisor Tatiana Skorka,

FCDC Director Steve Haney, Major Lisa Farmer, Major Tina Strange, Captain Shaun Hubbard,

Captain Nicholas Elko, and Lieutenant Jacob Crawford.  [R. 1 at 1-2]  The last six of these

defendants are supervisory officers employed by FCDC.  With one arguable exception, McAteer

does not allege that any of these supervisors were directly involved in the conduct he describes in

his Complaint.  Instead, throughout his Complaint McAteer refers to all of these supervisors

3

collectively as "Defendant Strange."  He alleges that this collective "Defendant Strange" was aware that subordinates were torturing him and permitted unidentified conditions to exist at FCDC which caused him emotional suffering and physical injuries.  *See* [R. 1 at 2, 13-14]

McAteer's Complaint is quite difficult to follow, but the gist of his allegations can be ascertained.  McAteer indicates that when he was an adolescent he was raped by one or more men, and that this has caused him to suffer from severe mental and emotional trauma throughout his life.  During his confinement at FCDC beginning in April 2019, McAteer repeatedly told nearly everyone he encountered – prisoners, guards, and staff members alike – of his traumatic past and his present mental health struggles.  McAteer indicates that while at the jail over a five-month period, he slammed his own head into a metal door "100 to 150 times," which required extensive medical treatment including hundreds of sutures.  But, he alleges, no one stopped him from engaging in self-harm or provided him with mental health care.  [R. 1 at 2-3, 10-13]

McAteer points to a number of incidents in May 2019 as indications that staff at the jail failed to prevent him from harming himself.  McAteer states that in April 2019, Corporal Wilder (who is not a named defendant) taunted him, and that this caused McAteer to inflict severe injury to his own head thirty minutes later.  McAteer filed a grievance regarding Wilder's conduct, but Capt. Hubbard denied the grievance on May 6, 2019, stating that McAteer chose to injure himself.  [R. 1 at 10; R. 1-8]  McAteer indicates that on May 10, 2019, Corporal Trotter (who is not a named defendant) prevented him from ordering something in the commissary.  Captain Hubbard denied his grievance regarding the matter, stating that commissary privileges are not afforded to inmates like McAteer who were confined in the segregation unit.  McAteer further alleges that Sergeant Parker (who is not a named defendant) retaliated against him by

transferring him in the middle of the night from Dorm A to Dorm B notwithstanding a medical order directing that he not be transferred.  [R. 1 at 14; R. 1-2]

McAteer alleges that on May 12, 2019, officer Rodriguez (who is not a named defendant) taunted him over the intercom for several hours, and that Capt. Hubbard denied his grievance about the matter two weeks later stating that it was without foundation.  [R. 1 at 15; R. 1-3; R. 1-4 at 2]  On May 15, 2019, McAteer filed a grievance complaining that "CompCare"[1] was "refusing to accept" that he suffered from mental health problems, and that as a result "they have constantly allowed me to be in position where I have violently re-traumatized" resulting in injury.  The grievance did not explain who was involved, what they did or did not do, or what the result was.  Supervisor Skorka denied the grievance, stating that McAteer's care met applicable standards and that he should discuss his diagnosis and treatment with his care providers.  While McAteer includes his inmate grievance on this matter [R. 1-6], he does not discuss the facts giving rise to it in the body of his Complaint.

McAteer complains that on May 16, 2019 Major Tina Strange improperly rejected a grievance he filed on the ground that it lacked sufficient information about the source and nature of his complaint, when McAteer believes that she should have been aware of the basis for it. [R. 1 at 9; R. 1-1]  McAteer filed a grievance on May 21, 2019 complaining that CompCare and FCDC officers had moved him to a different cell the day before but ignored his request to be placed in a restraint chair.  Capt. Hubbard denied the grievance on May 27, 2019, stating that the cell move was necessary because McAteer was no longer on medical hold and that staff did not "torture" him.  [R. 1 at 12; R. 1-9]

---

[1]  McAteer does not explain who or what "CompCare" is, but the Court assumes that it refers to a private organization that provides health care to inmates through a contract with FCDC. Regardless, "CompCare" is not named as a defendant in the Complaint.

McAteer also alleges that in mid-June 2019, Lieutenant Crawford was present when several unnamed officers used excessive force while removing him from his cell.  McAteer states that one officer, while restraining him, slammed his face down into the highly abrasive surface of the mattress pad, and later another officer grabbed him by the hair and pulled his head up, almost breaking his neck.  [R. 1 at 16; R. 1-4]  McAteer separately claims that, following his transfer to another facility and subsequent return to FCDC, officer "Jess X" (who is not a named defendant) assaulted him by stating that McAteer would be assigned to Dorm B.  [R. 1 at 17]  McAteer also appears to suggest (his allegations on the point are far from clear) that although he was ordered released from FCDC custody on September 20, 2019 (a Friday), Lt. Crawford did not process his paperwork and effectuate that release until September 23, 2019 (a Monday).  [R. 1 at 18, R. 1-5]

McAteer further contends that CompCare has complete authority to determine in what dorm psychiatric inmates are placed and when they are placed in restraint chairs.  He states that he was placed in restraint chairs 100-150 times or more, spent months in solitary confinement lying on the floor, his cell was brightly lit 24 hours a day, and he spoke to unspecified CompCare staff "20,000 times" over five months about his problems and needs.  McAteer seeks to hold CompCare liable for damages "under the master-servant rule (Respondeat Superior)."  [R. 1 at 19-20]  Finally, McAteer states that on February 26, 2020 – five months after he was released from FCDC – he was arrested and CompCare employee Jess X directed that he be assigned to Dorm B.  McAteer suggests that because of the "overwhelming noise" in the dorm he again caused injury to his own head and was transported to the hospital.  [R. 1 at 22]

McAteer claims that these events violated the Universal Declaration of Human Rights; the International Covenant on Civil and Political Rights; the third and fourth Geneva Conventions; the Convention Against Torture; 18 U.S.C. § 242; the Fifth, Eighth, and Fourteenth

Amendments to the United States Constitution; and constitute various torts under state law.
[R. 1 at 3, 4, 11-23]

### III

The Court, having thoroughly reviewed McAteer's Complaint and the documents he has
filed in support of it, concludes that it must be dismissed for several reasons.

Until a defendant is served with process or waives the requirement, a court may not
exercise personal jurisdiction over him. *King v. Taylor*, 694 F.3d 650, 655 (6th Cir. 2012). Rule
4(m) of the Federal Rules of Civil Procedure requires a plaintiff to effect service within ninety
days after the complaint is filed. If this is not accomplished, the rule requires dismissal of the
complaint without prejudice. *Byrd v. Stone*, 94 F. 3d 217, 219 (6th Cir. 1996). In this case,
McAteer filed his complaint on August 6, 2020; he paid the filing fee on September 3, 2020; and
the Court ordered him to effect service on September 9, 2020. [R. 1, 10, 12] Service of process
was therefore required to be accomplished no later than December 8, 2020. Because the plaintiff
did not complete service by that date, the complaint is subject to dismissal without prejudice.

That said, the Court may grant relief if the plaintiff demonstrates good cause for the
failure. *Henderson v. United States*, 517 U.S. 654, 662 (1996). Here, through various filings
McAteer has indicated that he was at first homeless, then was able to rent a room in a home, then
left that residence and was again homeless, and then with assistance obtained emergency
housing. [R. 1, 10, 11, 16] The Court finds that these circumstances presented substantial
financial and logistical difficulties in effecting service of process, and establish good cause for
the failure to effect service. Dismissal of the complaint upon that ground is not warranted.

However, McAteer's federal claims must nonetheless be dismissed. As noted above, he
mentions a number of international declarations and conventions as sources for his claims, but

none of them provide for a private right of action which can form the basis for a civil suit.  *See*

*Huynh Thi Anh v. Levi*, 586 F. 2d 625, 629 (6th Cir. 1978) (holding that the Geneva Convention

and the Universal Declaration of Human Rights "do not create a private right of action for aliens

in the federal courts."); *Konar v. Illinois*, 327 F. App'x 638, 640 (7th Cir. 2009) (same, citing

*Sosa v. Alvarez-Machain*, 542 U.S. 692, 734 (2004)); *Renkel v. United States*, 456 F.3d 640, 644-

45 (6th Cir. 2006) (no private right of action under the Convention Against Torture); *Bannerman*

*v. Snyder*, 325 F.3d 722, 724 (6th Cir. 2003) (no private right of action under the International

Covenant on Civil and Political Rights) (*citing Buell v. Mitchell,* 274 F.3d 337, 372 (6th Cir.

2001).  And while McAteer cites 18 U.S.C. § 242, he lacks standing to assert a claim based upon

an asserted violation of federal criminal law.  *See Kafele v. Frank & Wooldrige Co.*, 108 F.

App'x 307 (6th Cir. 2004) (no private cause of action under 18 U.S.C. § 242).

McAteer also claims violation of his rights under the Fifth, Eighth, and Fourteenth

Amendments to the United States Constitution.  However, he makes plain from his complaint

that he did not fully and properly exhaust his administrative remedies prior to filing suit.  Federal

law requires a prisoner wishing to challenge the manner in which his criminal sentence is being

carried out to exhaust all available administrative remedies.  42 U.S.C. § 1997e(a); *Jones v.*

*Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the

PLRA and that unexhausted claims cannot be brought in court.").  McAteer did file several

inmate grievances while he was incarcerated.  [R. 1-1 to R. 1-9]  However, all but one of those

grievances related to the conduct of subordinate officers, including Cpl. Wilder, Cpl. Trotter,

Sgt. Parker, Sgt. Rodriguez, Sgt. Debord, Sgt. Price, and Ofc. Spicer.  But those persons are not

named as defendants in the complaint, and none of his grievances suggest that his real quarrel

was with the conduct of their supervisors.  To satisfy the exhaustion requirement, the prisoner-

plaintiff's grievances must have "give[n] the agency a fair and full opportunity to adjudicate their claims," meaning "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Because McAteer's claims in his complaint are factually and legally distinct from the matters asserted in his inmate grievances, his claims are unexhausted. *See Pruitt v. Holland*, No. 10-CV-111-HRW, 2011 WL 13653 (E.D. Ky. Jan. 4, 2011); *Johnson v. Johnson*, 385 F. 3d 503, 517-18 (5th Cir. 2004); *Griffin v. Arpaio*, 557 F. 3d 1117, 1120 (9th Cir. 2009); *Johnson v. Woodford*, No. CV 04–05995–GHK, 2010 WL 4007308, at *4 (C.D. Cal. April 20, 2010) ("Where one set of facts and circumstances gives rise to more than one potential claim, the plaintiff cannot exhaust all of the potential claims by merely exhausting one such claim.").

McAteer's complaint also makes plain that he seeks to hold the named defendants liable for the asserted misdeeds of their subordinates simply because they are supervisors. Indeed, he states so expressly when he invokes the doctrine of *respondeat superior*. But the Supreme Court long ago made clear that this doctrine does not apply in the civil rights context: *respondeat superior* is not an available theory of liability. *Polk County v. Dodson*, 454 U.S. 312, 325-26 (1981). Instead, in order to recover against a given defendant for an asserted violation of constitutional rights, the plaintiff "must allege that the defendant [was] personally involved in the alleged deprivation of federal rights." *Nwaebo v. Hawk-Sawyer*, 83 F. App'x 85, 86 (6th Cir. 2003) (*citing Rizzo v. Goode*, 423 U.S. 362, 373-77 (1976)). McAteer offers nothing beyond conclusory assertions that the FCDC defendants, whom he refers to only collectively as "Defendant Strange," somehow failed to prevent such conduct from occurring. This is not sufficient. *Sampson v. Garrett*, 917 F. 3d 880, 882 (6th Cir. 2019) ("Even a pro se prisoner must link his allegations to material facts … and indicate what each defendant did to violate his rights

…"). Nor is the fact that a supervisor denied an inmate grievance regarding the underlying conduct. *Shehee v. Luttrell*, 199 F. 3d 295, 300 (6th Cir. 1999); *Alder v. Corr. Medical Services*, 73 F. App'x 839, 841 (6th Cir. 2003); *Perkins v. Washburn*, No. 3: 19-CV-959, 2020 WL 3972749, at *9 (M.D. Tenn. July 14, 2020) ("A failure to take corrective action in response to an inmate grievance or complaint does not supply the necessary personal involvement for Section 1983 liability.").

Finally, McAteer's claims arising from these events are barred by the statute of limitations. The statute of limitations for civil rights actions under § 1983 is governed by the limitations period for personal-injury cases in the state in which the cause of action arose. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). In Kentucky, the one-year statute of limitations found in Ky. Rev. Stat. § 413.140(1)(a) establishes the applicable period. *Collard v. Ky. Bd. of Nursing*, 896 F. 2d 179, 182 (6th Cir. 1990). Claims under § 1983 accrue when the plaintiff knew or should have known of the injury that forms the basis of the claim alleged in the complaint. *Ruff v. Runyon*, 258 F. 3d 498, 500 (6th Cir. 2001). Here, the various events described in the complaint transpired beginning in mid-April 2019 and running through mid-June 2019. McAteer promptly filed grievances regarding these events, evidencing his actual knowledge of both injury and cause. His claims therefore accrued at that time. *Collard*, 896 F.2d at 183 ("[T]he statute of limitations begins to run when the plaintiff knows or has reason to know of the injury which is the basis of his action and that a plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence.").

McAteer, plainly aware of the rapidly-approaching limitations bar, filed his first complaint on April 14, 2020. *McAteer v. Lexington-Fayette Urban Co. Gov't*, No. 5: 20-151-JMH (E.D. Ky. 2020) [R. 1 therein]. McAteer's claims in that action would therefore have been

10

timely, but for his later decision to voluntarily dismiss that case.  By the time he later filed his

complaint in this case on August 6, 2020, [R. 1], the limitations period had expired.  The

pendency of the first action did not toll the running of the limitations period in light of its

subsequent voluntary dismissal.  *Cf. Halldorson v. Sandi Grp.*, 934 F. Supp. 2d 147, 156 (D.D.C.

2013) (*citing Ciralsky v. CIA*, 355 F. 3d 661, 672 (D.C. Cir. 2004) ("[O]nce a lawsuit is

dismissed, even if without prejudice, 'the tolling effect of the filing of the suit is wiped out and

the statute of limitations is deemed to have continued running from whenever the cause of action

accrued, without interruption by that filing.'"); *In re Direxion Shares ETF Tr.*, 279 F.R.D. 221,

236 (S.D.N.Y. 2012) ("[A] voluntarily dismissed [claim] does not toll the statute of limitations,

nor can claims relate back to a [claim] that no longer exists[.]") (citations and internal quotation

marks omitted); *Ellering v. Sellstate Realty Sys. Network, Inc.*, 801 F. Supp. 2d 834, 842 (D.

Minn. 2011).  McAteer's claims are therefore time barred.[2]

   In one of his recent submissions, McAteer suggests that he should be entitled to equitable

tolling because he was not of sound mind when his claims accrued in April 2019.  [R. 14 at 2-3]

Because § 1983 does not provide its own limitations period, the Court borrows not only the

analogous limitations period from Kentucky, but its tolling rules as well.  *Kalasho v. City of*

*Eastpointe*, 66 F. App'x 610, 611 (6th Cir. 2003) (*citing Wilson v. Garcia*, 471 U.S. 261, 268-69

---

[2]  Three of McAteer's claims are not self-evidently time-barred, but fail for other reasons.  First, McAteer alleges that in September 2019 Lt. Crawford waited over the weekend before effectuating his release from the jail.  But this allegation does not state a colorable federal constitutional claim, instead suggesting at best a false imprisonment claim under Kentucky law.  State law claims are addressed below.  Second, McAteer states that during the course of his confinement CompCare directed the excessive use of restraint chairs and solitary confinement.  This claim is likely time-barred, but clearly fails because its allegations are conclusory and because CompCare is not a named defendant.  Third, McAteer alleges that in February 2020 CompCare employee Jess X assigned him to a dorm where he injured himself.  But neither CompCare nor "Jess X" are defendants, and this allegation fails to state a viable constitutional claim.

(1985)); *Hardin v. Straub*, 490 U.S. 536, 539 (1989) ("Limitations periods in § 1983 suits are to be determined by reference to the appropriate 'state statute of limitations and the coordinate tolling rules.'").  Kentucky law provides that the running of the limitations period is tolled if the plaintiff is "of unsound mind" at the time the cause of action accrued.  Ky. Rev. Stat. 413.170(1).  This standard does not require the plaintiff to show that he is insane, only that he is incapable of handling his own affairs.  *Cf. Se. Ky. Baptist Hosp., Inc. v. Gaylor*, 756 S.W.2d 467, 469 (Ky. 1988).

Here, McAteer offers nothing but his self-serving and conclusory assertion that he was of unsound mind in April 2019.  Even if he were correct, the tolling provided by the Kentucky statute ceases "after removal of the disability," meaning once the plaintiff sufficiently regains command of his faculties.  *Cf. Gray v. Lexington-Fayette Urban Cty. Gov't*, No. 5: 13-CV-45-DCR, 2013 WL 3322609, at *8 (E.D. Ky. July 1, 2013).  In the days and months following the events about which he complains, McAteer was sufficiently capable of managing his affairs to file numerous grievances with jail officials regarding the officers' alleged misconduct.  And as noted above, McAteer is an experienced *pro se* litigator.  McAteer filed his first complaint almost exactly one year after the first of the pertinent events described in his complaint, indicating his subjective awareness of the statute of limitations and the need to file suit before its expiration.  Further, his many filings in both actions contain numerous references to statutes, court decisions, and rules relevant (at least superficially) to his claims.  These facts, whether considered individually and collectively, thoroughly undermine his current suggestion that he was "of unsound mind" within the meaning of Ky. Rev. Stat. 413.170(1) to warrant tolling.  This is not to conclude that McAteer's assertions regarding his mental health are inaccurate, only that the facts contradict his assertion that they substantially interfered with his ability to file suit.

12

For each of these reasons, the plaintiff's federal claims are subject to dismissal. Under such circumstances, federal law provides that a district court may "decline to exercise supplemental jurisdiction over a claim [if] the district court has dismissed all claims over which it has original jurisdiction ..." 28 U.S.C. § 1367(c)(3). Where, as here, the Court has dismissed all of the plaintiff's federal claims, the Court concludes that the balance of judicial economy, convenience, fairness, and comity all point toward declining supplemental jurisdiction. *Carnegie–Mellon University v. Cohill*, 484 U.S. 343 (1988); *Musson Theatrical, Inc. v. Federal Exp. Corp.*, 89 F.3d 1244, 1255 (6th Cir. 1996) ("When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims."). The Court will therefore dismiss the plaintiff's state law claims without prejudice.

Accordingly, it is **ORDERED** as follows:

1. Any and all federal claims asserted in the Complaint filed by Plaintiff Roy McAteer [R. 1] are **DISMISSED**. Any claims asserted and arising under state law are **DISMISSED WITHOUT PREJUDICE**.

2. All pending motions are **DENIED AS MOOT**.

This 17th day of February, 2021.

Gregory F. Van Tatenhove
United States District Judge